[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee. Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including without limitation those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment);
R.I.G.L. 8-2-11, 1 provides, in pertinent part that:
 "Such administrator/master may be authorized (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books papers, vouchers documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above, a hearing was held on the above referenced claim on July 7 and 8, 1992 and June 7, 1994. At the conclusion of the hearing the parties submitted Post-Hearing Memoranda.
Claimants allege that they are the holders of two non-interesting bearing passbooks at Heritage Loan Investment Company. They testified that that the passbooks were kept in the vault at Heritage and were in their possession only when they went to Heritage to transact business in those accounts. Claimant. Phyllis Gillette contends that on or about October 15, 1990 a deposit was made into one of these accounts. At that time. Claimant states that she observed the balance in one account as $105,000 and in the other $45,000 Like other claims made against Heritage, no entries were ever made into the computer records of Heritage and Claimants acknowledge that neither deposit nor withdrawal slips were required to conduct business. However, unlike the other claims filed here no passbooks or other evidence of the existence of the two non-interest bearing accounts. As stated above the Claimants testified that the passbooks were left in the vault at Heritage rather than being left in their possession. After Heritage closed no passbooks were discovered.
In addition to the Claimed Accounts listed above. Claimants also allege that from time to time they place cash in the Heritage vault for "safekeeping". Evidence of this was introduced in the form of "safekeeping receipts" which totaled $47,400 as of the closure of Heritage.
When a party makes a claim for funds allegedly on deposit at a financial institution the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally to a commercial, checking, savings, time, or thrift account or which is evidenced by a certificate of deposit thrift certificate, investment certificate. certificate of indebtedness or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds held as security for an obligation due to the bank or savings association or others including funds held as dealers reserves) or for securities loaned by the bank or savings association funds deposited by debtor to meet maturing obligations funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit, and withheld taxes; Provided that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931. 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the instant case, no prima facie evidence was even presented since no passbooks were produced. Claimants are unaware of any account numbers the non-interest bearing accounts may have carried. Claimants have only their own testimony that they remember the accounts and the balances just before Heritage closed. However Claimant Mario Papitto under cross examination was unable to remember what the balance was on any of their on the accounts.
Also testifying was Mr. George an employee of Heritage Loan investment. He stated that Claimants were regular customers of Heritage that non interest bearing accounts were a service provided to Heritage customers and that Claimants did possess two such accounts However he also testified that Heritage although offering such accounts required deposit and withdrawal slips for transactions. No such documentation has been presented for the two Claimed Accounts.
Joseph Mollicone. Jr made it clear in his testimony that all of the Claimed Accounts were accounts held by him not Heritage. Mollicone stated that Claimant. Phyllis Gillette established these accounts with him in order to keep them secret. Ms. Gillette concurred that secrecy was her motive in establishing the non-interest bearing accounts but denies that the accounts were anything other than Heritage deposit accounts.
In addition to these non-interest bearing accounts. Claimants allege that funds were placed in Heritage for safekeeping. To support this claim, evidence was introduced of several "safekeeping receipts". On July 5, 1988. Claimant left $20,000 for safekeeping, $32,000 was left on June 8, 1990, $6,000 on July 11, 1990, $2,400 on July 31, 1990 and on August 6, 1990 Claimant left $2,000. Again, Claimant describes these transactions as "services" provided by Heritage for its customers.
As to the non-interest bearing accounts this Court is unable to determine what the balances in these Claimed Accounts may be No evidence of the existence of these accounts was ever produced. Claimants do not even remember their account numbers. Claimants point to Mollicones testimony that it was "highly possible" that they had one or more non-interest bearing accounts during the period Even if it were "highly possible" how is the Court to determine the actual amounts in the accounts? For this Court to place a dollar figure on these accounts would be nothing more that an engagement in pure speculation. This the Court declines to do. Claimants had a number of on line accounts at Heritage. They established these claimed accounts in order to keep the accounts secret and certainly succeeded in that. They knew or should have known that these accounts were different from accounts held in the usual course of business at Heritage. This Court will not distribute taxpayers dollars through DEPCO to any Claimant based on the quality of evidence presented in this claim. Therefore, this Court will find that Claimants are not entitled to priority as to the two non-interest bearing accounts if for no other reason than that evidence has not been presented to establish either the existence of the accounts or the amount of the unpaid balance.
As to the Safekeeping receipts, the Court can not find that these are deposit accounts at all. Even if these funds were held by Heritage it is doubtful that they would be considered deposit accounts. Claimants had on line deposit accounts and claimed to have two non-interest bearing accounts, they therefore must have considered these transactions to be different. Even the slips introduced into evidence fail to refer to the monies as deposits.
The Receiver suggests that these Claimed Accounts are more in the nature of a bailment and this Court concurs. As bailments they are not entitled to priority as a deposit with Heritage.
Counsel will prepare an order in accordance with this decision.